**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY H. SURMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | Case No.  SA CV 17-01087-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. <u>INTRODUCTION</u>

Plaintiff Jeffrey H. Surman ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB").  For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. <u>PROCEEDINGS BELOW</u>

On September 6, 2013, Plaintiff protectively applied for a period of disability and DIB alleging disability beginning July 8, 2010.  (Administrative Record ("AR") 91-92.)  His application was denied initially on December 26, 2013, and upon reconsideration on March 10, 2014.  (AR 112, 119.)  On April 17, 2014,

Plaintiff filed a written request for hearing, and a hearing was held on January 14, 2016. (AR 41, 126.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert, an impartial medical expert, and Plaintiff's sister, who testified as a witness. (AR 43-90.) On January 28, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] through December 31, 2015, the date last insured. (AR 35.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on June 22, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 8, 2010, the alleged onset date ("AOD"), through December 31, 2015, the date last insured. (AR 25.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder; anxiety disorder; and autism spectrum disorder. (*Id*.) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 27.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine tasks, no jobs requiring hypervigilance, no job[s] requiring interaction with public, occasional contact with coworkers or supervisors, no jobs requiring

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

teamwork, and no jobs in which he is responsible for the safety of others.

(AR 28.) At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a furniture assembler or warehouse worker, and therefore the ALJ did not proceed to **step five**.[2] (AR 35.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date last insured. (*Id.*)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is

---

[2] As the Commissioner concedes (Joint Submission ("JS") 51-52), the ALJ stated both that Plaintiff was unable to perform any past relevant work and that Plaintiff was capable of doing so. (AR 33-34.) Plaintiff raises this issue for review, but as the Court finds remand warranted for other reasons, the Court declines to address the impact of this error.

3

susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. **DISCUSSION**

Plaintiff raises the following issues for review: (1) whether the ALJ adequately assessed Plaintiff's testimony; (2) whether the ALJ properly considered the opinion of Plaintiff's psychologist; (3) whether the ALJ properly considered the opinion of Plaintiff's examining psychologist; (4) whether the Appeals Council failed to properly consider new and material evidence; and (5) whether Plaintiff's RFC precludes the ALJ's finding that Plaintiff could perform past work. (*See* JS 1-2.) For the reasons below, the Court agrees with Plaintiff regarding the assessment of his testimony and remands on that ground.

### A. **The ALJ's Assessment of Plaintiff's Testimony Is Not Supported By Substantial Evidence**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony. (*See* JS 10.) The Commissioner argues that the ALJ properly evaluated Plaintiff's testimony and that the ALJ's findings are supported by substantial evidence. (*See* JS 10, 17.)

#### 1. **Plaintiff's Testimony**

Plaintiff testified that he last worked in July 2010 doing guest services and cashier work at Target. (AR 44.) After three years at that job, Plaintiff was terminated for breaking store policy during a customer's return transaction. (AR

4

45.) Plaintiff also had trouble getting along with his supervisor and coworkers. (AR 65.)

Prior to working at Target, Plaintiff worked at a furniture store, but he was terminated after nine months because he had broken too many items. (AR 45-46.) Plaintiff also worked as a warehouse manager and a sales, classroom, and party manager at another retail store. (AR 46.) Plaintiff explained that he was let go from his job at Home Depot because he "had a couple accidents with the forklift." (AR 47.) Plaintiff stated that he had some jobs where he knew that he was "cognitively" having problems, so he left before he was fired. (AR 66.)

Plaintiff testified that since his last job, he has applied for work at retail stores, drug stores, restaurants, and art stores. (AR 48.) Plaintiff stated that he feels like he gets along with others, but the way he perceives the things he says and the way that others perceive his statements is "a whole different story." (*Id.*) Plaintiff asserted that he does not intentionally try to put himself in that situation, but "it seems that it's been a problem." (*Id.*)

Plaintiff completed two years of junior college and two years of college, but he did not earn a degree. (AR 49.) Plaintiff lives alone in an efficiency apartment. (AR 48.) Plaintiff received unemployment for two years, and he now receives an allowance from his family. (*Id.*) Plaintiff explained that his family began supporting him after his unemployment ran out because they are "concerned," and without their support, he would be "living in a cardboard box." (AR 66.) Plaintiff stated that his family made him "become self-aware" and realize that his condition and limitations "were basically awful in trying to keep a job and find a job." (*Id.*) Plaintiff asserted that he "just thought [he] went through a lot of jobs" and he thought the things that he said to people at his jobs were the "correct thing[s] to say, and obviously those things haven't been." (*Id.*)

Plaintiff testified that throughout his whole life, he has had "a very hard time" and thinks that he presents himself one way, but other people see him

differently. (AR 67.) Plaintiff explained that he "seem[s] to think that [he] say[s] things that are truthful and honest," but other people "would say no, you shouldn't have said something like that." (*Id.*) Plaintiff stated that now that he is "becoming more self-aware," after he says something he realizes that he has done it again. (*See id.*)

When asked to give an example of his inappropriate statements, Plaintiff explained that while he worked at Target, the store had a promotion that would apply if a customer bought three specific items. (*See id.*) A customer approached Plaintiff in guest services because she did not receive the promotion. (AR 67-68.) Plaintiff told her that she bought only two of the items and not three. (AR 68.) Plaintiff walked the customer to the appropriate aisle and showed her that if she bought three of one item and not two of other item, she would have received the promotion. (*See id.*) Plaintiff asserts that the customer informed him that she was "going to tell on [him]." (*Id.*) After Plaintiff took a break, his supervisor reprimanded him because he "didn't say [he] was sorry that she bought the wrong [item]." (*Id.*) Plaintiff explained that he did not think that he had to apologize for her buying the wrong item because he "didn't tell her what to buy." (*Id.*) Plaintiff asserted that he "just simply showed her that she got the wrong one" and showed her how she could have received the promotion, so he "didn't feel that what [he] told the customer was inappropriate." (*Id.*)

Plaintiff testified that, in another incident, he referred to his immediate supervisor at Target as a "snot nosed brat" because she was about the same age as Plaintiff's son. (AR 69.) Plaintiff explained that he had been working longer than she had probably been working, and they "just had run in after run in." (*Id.*) Plaintiff felt that his supervisor "was out for him" and she finally fired him. (*Id.*) Plaintiff also testified that when he worked at another store, he had "[m]any a run in" with his store manager. (*Id.*)

///

6

Plaintiff stated that at Target, he once told one of the 18- or 19-year-old "little kids" with whom he worked that he was lethargic. (*Id.*) Plaintiff explained that this coworker looked at Plaintiff like he "had said something bad," but Plaintiff thought that he "could have called the guy something worse than that" and thought that he had been appropriate. (AR 69-70.)

While Plaintiff worked at a different retail store, he had a boss who had one glass eye. (AR 70.) Plaintiff testified that one day, after his boss "had just been on [his] case," he told her "that she'd make a good eye witness." (*Id.*) Plaintiff stated that his boss "didn't find that appropriate," but Plaintiff "thought it was kind of funny." (*Id.*) Plaintiff explained that, in hindsight, he sees that he should not have said that. (*Id.*)

Plaintiff stated that he looked for jobs and went to 20 places every two weeks, for about 20 weeks or more. (AR 71.) Plaintiff explained that he went to a few places where he filled out an application and was told to return in a week and a half, which gave Plaintiff the impression that they liked him. (AR 72.) However, when he returned, they always had a reason not to hire him. (*See id.*) Plaintiff stated that he thought they had looked at his work history or called people at his previous jobs, which made them not interested in hiring him. (*Id.*)

Plaintiff testified that he met with Scarlet Vondeeden from the State Council on Developmental Disabilities at least 18 times. (*Id.*) Ms. Vondeeden assisted Plaintiff with the social security process and helped him "figure out what [he] could or couldn't do." (*Id.*) Plaintiff stated that Ms. Vondeeden "was keenly aware that [his] situations would hinder [him] in getting some kind of employment." (*Id.*)

Plaintiff also did two tests with the Department of Rehabilitation. (*Id.*) Plaintiff explained that he continued to follow up with them and told them what he was doing. (*See id.*) Plaintiff stated that he was told that a man "had to close off the file and he said, you know, we'll close it," but the file could be reopened if Plaintiff ever wanted to do so. (AR 72-73.)

Plaintiff testified that he thinks that his condition has "certainly gotten worse." (AR 71.) He has no motivation and no interest, and "it's very, very difficult." (*Id.*) Plaintiff agreed that being told over a period of time that he is not capable of working has affected him. (*Id.*)

Plaintiff stated that he has no social activities and has one friend who he speaks to once or twice a year. (AR 76.) Plaintiff infrequently sees or talks to his adult son, who lives in Virginia. (AR 77.)

Plaintiff spends his days worrying, "[p]retty much in a fetal ball in bed." (AR 70.) Plaintiff testified that he lies down for six or eight hours during the day, and it varies based on how depressed he might be. (AR 73.) Plaintiff explained that he is not sure where his life is going or how things will work out, which is "all very kind of frightening." (AR 70.) Plaintiff wonders if his depression will get better or worse. (*Id.*) Plaintiff testified that it is very difficult for him to even get dressed to pick up his mail downstairs. (*Id.*) Plaintiff stated that he has talked to his doctors about that, and he is on medication. (AR 70-71.) In order to go see his doctor, Plaintiff has to "really plan" to do so, getting up a couple hours in advance and "psych[ing] [him]self to do it." (AR 73.)

Plaintiff sees Dr. Pontius twice a month. (*Id.*) Plaintiff also sees a psychiatrist, who gives him medication, and a licensed clinical social worker at Orange County Mental Health. (AR 73-74.) Regarding his medication, Plaintiff stated that he thinks that over time, someone can build up a tolerance so the medication may not be as effective. (AR 74.) Plaintiff explained that he has been taking an antidepressant "off and on," and he is glad that he was also recently prescribed an antianxiety medication. (*Id.*)

Plaintiff testified that his anxiety is a recent problem, and he had anxiety or panic attacks about three times in the prior six months. (*Id.*) One of Plaintiff's anxiety attacks lasted "for a couple days." (AR 75.) Plaintiff explained that the day after an attack, he "just want[s] to stay in bed and not deal with the world." (*Id.*)

1 | Plaintiff stated that he has a lot of time to think about his situation, and he sometimes dwells on it too much and "beat[s] up upon [himself]," which makes him want to stay in bed. (*Id.*) Plaintiff asserted that he has trouble concentrating daily and he lacks concentration, focus, and the ability to be connected. (*Id.*) Plaintiff explained that as his depression has gotten worse and as he has spent more time learning about his Asperger's and PTSD, Plaintiff blames himself, dwells upon everything, thinks negatively of it all, and "just overall feel[s] bad that [he's] done that." (*Id.*) Plaintiff testified that he has trouble sleeping at night because his mind races. (AR 76.)

Plaintiff explained that his situation and difficulties affect not only his ability to have a job, but "it's personal, family, friends, [his] child, [and] work," and "one thing just complicates the other." (AR 77.)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

///

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "allegations concerning the intensity, persistence and limiting effects of his symptoms are partially credible." (AR 29.) However, the ALJ found that Plaintiff's "allegations of disabling symptoms as a whole" were "not fully credible to the extent they suggest limitations and symptoms that are greater than those recorded in the objective evidence at the hearing level." (*Id.*) The ALJ relied on the following reasons: (1) limited mental health treatment; (2) failure to participate in vocational rehabilitation; and (3) lack of objective medical evidence to support the alleged severity of symptoms. (AR 29, 33.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Limited Mental Health Treatment

The ALJ observed that, despite Plaintiff's allegations that his mental impairments date back to 1993, he received no formal treatment until July 2014, after the filing of his application for benefits. (AR 29.) The ALJ also noted that Plaintiff's current psychologist, Ken Pontius, Ph.D., evaluated Plaintiff in September 2011. Dr. Pontius diagnosed Plaintiff with Asperger's disorder and indicated that it created difficulty in Plaintiff's ability to maintain employment. (*Id.*) Dr. Pontius also noted a diagnosis of dysthymic disorder, but he did not indicate that it caused any limitations or that Plaintiff received any treatment. (*Id.*) The ALJ observed that there were "minimal records of formal treatment" for Plaintiff's mental impairments from 2001 through 2013, except for one psychological evaluation in May 2013. (*Id.*) The ALJ therefore concluded that this "significant gap in the claimant's treatment" diminishes Plaintiff's allegations of disabling symptoms. (*Id.*)

In his January 2014 Disability Report, Plaintiff states that he relies on Medical Services Initiative ("MSI"), which provides preventative health services for low-income individuals who are ineligible for other government health care.

(AR 320.) Plaintiff states that MSI "do[es] NOT provide coverage for ongoing psychological treatment, counseling, or therapy." (*Id.*) A September 2013 letter from a representative of the Office of the California State Council on Developmental Disabilities asserts the same. (AR 466 ("MSI solely provides for preventative health services . . . but not for ongoing psychological treatment, counsel, or therapy, which Mr. Surman really needs. . . . If Mr. Surman had full-coverage health insurance now, undoubtedly, there would be far more documentation regarding his mental health and autism, as it would expand into therapy, autism treatment, and psychiatric care. MSI does not cover such extensive treatment.").) There is no indication that the ALJ considered this explanation for Plaintiff's lack of mental health treatment, and "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (the Ninth Circuit "ha[s] proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it" (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996))).

Moreover, the Ninth Circuit has criticized the practice of discrediting evidence based on a lack of treatment "both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) (internal quotation marks omitted) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The Commissioner contends that Plaintiff's situation is distinguishable from that of the claimant in *Nguyen*. (JS 16.) The Commissioner asserts that, in light of Plaintiff's August 2014 statement that he had previously received many years of treatment for depression (*see* AR 729), Plaintiff's failure to seek treatment is due to

11

treatment being unnecessary, not due to Plaintiff's unawareness of his condition. (*Id.*) If Plaintiff had indeed previously received treatment for depression, this fact may distinguish this case from *Nguyen*. *See King v. Astrue*, No. 1:09CV01940 DLB, 2010 WL 5300856, at *10 (E.D. Cal. Dec. 17, 2010), *aff'd sub nom. King v. Comm'r of Soc. Sec. Admin.*, 475 F. App'x 209 (9th Cir. 2012) ("Plaintiff's treatment history, however, is not comparable to the claimant in *Nguyen,* who neither sought nor received *any* mental health treatment prior to a consultive examination. The facts of this action show that Plaintiff did in fact receive treatment from her primary care physician but ignored his repeated advice to seek specific mental health treatment."). However, the ALJ did not discuss this statement or the assumption that Plaintiff knowing failed to seek or continue treatment, and this Court cannot affirm on grounds on which the ALJ did not rely. *See Orn*, 495 F.3d at 630.

Furthermore, the August 2014 statement regarding "many years of treatment for depression" in fact contradicts the ALJ's conclusion that Plaintiff received limited mental health treatment. *See Holohan*, 246 F.3d at 1207 (finding the ALJ erred by selectively picking some entries in the medical record while ignoring others); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

In sum, the Court cannot find that substantial evidence supports the ALJ's findings regarding Plaintiff's mental health treatment. The Court therefore finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Failure to Participate in Vocational Rehabilitation

The ALJ observed that Plaintiff qualified for vocational rehabilitation, but there was no indication that Plaintiff had completed the program or attempted to

work within the program. (AR 29; *see* AR 383-91.)  The ALJ stated that, although this factor is not determinative of Plaintiff's overall credibility, it "raises some questions as to whether [Plaintiff's] current unemployment is truly the result of medical or mental problems or a lack of motivation to work," especially in light of the limited evidence of treatment and "other factors" affecting the credibility of Plaintiff's allegations. (*Id.*)

First, the Court observes that Plaintiff testified, although ambiguously, about working with the Department of Rehabilitation and providing a representative with updates. (*See* AR 72-73.)  As Plaintiff notes (JS 7), Plaintiff also reported during an intake assessment with the County of Orange Health Care Agency Behavioral Health Services that he was unable to obtain employment through the Department of Rehabilitation "due to [the] severity of his depressed mood/lack of motivation and . . . having to care for his frail mother." (AR 723.)  The Court therefore is unable to agree that "there is no indication that he . . . attempted to work within" the vocational rehabilitation program.

Additionally, the Court observes that Plaintiff has not shown little propensity to work such that his unemployment history should diminish his credibility. *Cf. Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that an ALJ's finding that claimant had "extremely poor work history" and showed "little propensity to work in her lifetime . . . negatively affected her credibility"). Plaintiff testified about being terminated from several jobs due to his inability to perform the work or to appropriately interact with supervisors or the public. (*See* AR 45, 47, 65-70.)  In his Adult Function Report, Plaintiff indicated that he was "fired or forced to resign" from at least 28 of his 30 jobs. (AR 275.)  Plaintiff also testified that he applied for many other jobs, but he continued to struggle with finding employment. (*See* AR 48, 71-72.)  Under these facts, Plaintiff's inability to find or maintain full-time employment is consistent with his allegations of disability. *See Lingenfelter*, 504 F.3d at 1038 ("It does not follow from the fact that a claimant

13

tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain." (emphasis in original)).

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's subjective testimony.

### c. Reason No. 3: Lack of Supporting Objective Medical Evidence

The remaining reason for discounting Plaintiff's subjective testimony—lack of supporting objective medical evidence (AR 29, 33)—cannot form the sole basis for discounting pain testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

In sum, the ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective testimony. Accordingly, remand is warranted on this issue.

### B. The Court Declines To Address Plaintiff's Remaining Arguments

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

///

///

## C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony.

On remand, the ALJ shall reassess Plaintiff's subjective allegations in light of SSR 16-3p – Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016), which would apply upon remand. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

///
///
///
///

## V. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 19, 2018

*Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

16